DALLAS RY. & TERMINAL CO. v. GRAHAM.

No. 13568.

Court of Civil Appeals of Texas. Dallas.

Nov. 10, 1944.

Rehearing Denied Jan. 5, 1945.

See also 165 S.W.2d 1002.

Burford, Ryburn, Hincks & Charlton and Clarence A. Guittard, all of Dallas, for appellant.

Milton K. Norton, DeShazo & Hyde, and Francis M. Chaney, all of Dallas, for appellee.

YOUNG, Justice.

This is a second appeal, each party having in turn recovered judgment. Here, after retrial and jury verdict, plaintiff's judgment for $4,000 has been brought up for review on various specifications of error. The factual background of plaintiff's action is sufficiently stated in former opinion (165 S.W.2d 1002), made part hereof by reference.

The case was tried on amended pleadings with additional issues involving, mainly, contributory negligence on part of plaintiff; while certain defensive issues, given on former trial, were by the court refused. Jury answers resulting in the instant judgment are set forth in substance: (1) Defendant company on the occasion in question provided a place for passengers to alight, which required them to alight between the north and southbound tracks, which was negligence proximately causing plaintiff's injuries; (2) the operator of defendant's southbound street car failed to wait until all passengers discharged from its northbound car had removed themselves to a place of safety before moving the southbound car past said northbound car, which was negligence and proximate cause of injuries; (3) defendant's southbound car was being operated at a speed of 12 miles per hour just prior to the collision, which also constituted negligence and proximate cause; (4) operator of southbound car failed to keep a proper lookout for Minnie Graham, being proximate cause of the injuries to her; (5) failure of northbound car operator to lock his rear street car door while the southbound car was passing was not negligence; (6) the collision was not an unavoidable accident.

The following jury issues and answers touching on plaintiff's own conduct are quoted: (15) "Do you find from a preponderance of the evidence that at the time and on the occasion in question, Minnie Mae Graham failed to keep a proper lookout for the southbound street car?" Answer: "No." (17) "Do you find from a preponderance of the evidence that at the time and on the occasion in question, Minnie Mae Graham failed to listen for the approach of the southbound street car?" Answer: "No." (20) "Do you find from a preponderance of the evidence that at the time and on the occasion in question the failure of Minnie Mae Graham to go toward Asbury Street or Hillcrest Avenue before proceeding in an easterly direction, was a failure to exercise ordinary care?" Answer: "No." (23) "Do you find from a preponderance of the evidence that at the time and on the occasion in question Minnie Mae Graham failed to promptly alight from the northbound street

car after it stopped?" Answer: "No." Defensive issues 17, 20 and 23 along with related issues on negligence and proximate cause, were not submitted on former hearing, and appear as additional issues of the present trial.

A summary of defendant's points of appeal follows: (1) Error of the trial court in refusing its peremptory instruction because the evidence established contributory negligence as a matter of law; (2) no evidence to support the jury's finding that plaintiff did not fail to listen for approach of defendant's street car; (3) the court's error in not setting aside said finding that plaintiff did not fail to listen for approach of street car because such answer was clearly against the great weight and preponderance of evidence and prevented any finding on issue 18 of whether failure of plaintiff to listen was negligence and proximate cause of her injuries; (4) error in refusing to submit requested issues relative to plaintiff's conduct in moving toward the track without first ascertaining whether any street car was approaching, same having been held proper on former appeal; (5) similar error in refusing to submit the issue of whether plaintiff failed to use ordinary care in not keeping out of reach of the street car until it had passed.

Pursuant to request for directed verdict, appellant now insists that it was entitled to judgment in that plaintiff was guilty of contributory negligence as a matter of law in attempting to cross the east (southbound) car track without taking reasonable precaution for her own safety; or, concretely stated, the jury's findings (a) that she did not fail to keep a proper lookout, and (b) that she did not fail to listen for the approach of the street car, are without support in evidence and should be disregarded.

Such contentions require a resume of testimony involving the issues in question viewed most favorably from the standpoint of appellee. The following narrative of facts given by plaintiff is taken from appellant's brief: "At the time of the accident I was working as a cook at the Lambda Chi Fraternity House. I had been riding the Highland Park Street car about thirteen years. As the car approached Asbury Street I punched the button to signal the motorman to stop. The car stopped at the station at Asbury Street. When the car had stopped, I went to the back door and stood there. I stood on the trap and the door opened. I have never seen it open without someone on it. After the door was opened, I looked both ways and stepped down on the little step. It is about a foot wide. I did not see any other street car. I stepped off of that step onto the ground; then I made one or two steps. I can't remember so far back. I stepped down onto the step with one foot and then stepped off with the other foot on to the platform. Then I stepped forward one foot after the other. As to where I was when I first saw the street car,—when I knew anything I was struck. I don't remember ever seeing the street car. As I got out of the street car, there was a big post there to the left. It is just about the size of a telephone post. As well as I remember I believe it was about one foot from me as I got off. As the door opens, a portion of it stands out from the car. I don't know how many inches stands out. During the years I have ridden that street car, I have seen the southbound cars stop and wait while passengers unloaded from the northbound street car and got off of the track. They stop and wait all the time except that time I was getting off." On cross-examination plaintiff testified: "When the car stopped, I got up immediately and went to the back door. When I stood on the trap, the door in front of me opened. I stepped on the step and then got on the ground. I landed on the platform standing up and feeling all right. As I got off, I did not hear the bell of the car that was coming from the north. I did not hear it before I got off or after I got off. I never did hear it at any time. They have two tracks where the car stops. From then on it is a single track. If there was a car down there in sight, I could see the end of the car line if I looked. Before the car can go down there and come back, it waits until the other car gets there. I got off at the back end. I wasn't expecting to get hit. When I stepped off, I was hit. I was going toward S.M.U."

Chester Williams and Jestener Bagby, both passengers on the northbound car, and preparing to alight behind Minnie Graham, testifying in her behalf, made similar statements as to the manner of her exit. They did not hear the gong of said southbound car; Williams saying further that he had never seen it pass a standing car while passengers were being unloaded, save in

this instance. He also stated: "As I stood in the door of the street car, there was a telephone post between the tracks that blinded me from seeing the car; also the door that opened on the street car,—the little piece that extends out from the car as you get on it was between the post and the car and I was entirely blinded." Another witness of plaintiff, Mrs. Jack Wareham, though on the southbound car at the time, did not hear the sound of its bell or warning gong.

Five witnesses on behalf of defendant (two passengers and three employees) testified that the bell of the approaching car was sounded, of whom Motorman Pou, on the southbound car, stated on cross-examination that rear car doors of street cars used on the line would not open by means of the treadle without some action on part of the car operative; that when the door opened with passengers standing on the treadle at a stop it was an invitation to get off; also testifying to a company rule that when the northbound car, situated as the one in question, was unloading people on its platform there, the southbound car was not supposed to pass until passengers had been discharged or "turned loose."

Plaintiff was thirty-six years old, of some two-hundred pounds in weight, and from the record appeared of normal sight and hearing.

■ That plaintiff cannot be chargeable with negligence as a matter of law, is demonstrated, we think, by her narrative of the occurrence; the result being that her acts and omissions as charged by defendant became issues of fact for the jury in their province of determining whether or not such claimant was exercising due care for her own safety at the time. 30 T.J., Sec. 153, p. 830.

■ Alternatively it is urged that the jury finding (issue 17 that plaintiff did not fail to listen) is either not supported by evidence, or is so clearly against the weight and preponderance thereof as to be manifestly wrong. This being so, appellant argues that the court's conditional submission of issue 18 (not excepted to) concerning plaintiff's failure to exercise ordinary care (in matter of listening) has precluded the jury from passing on her negligence in that respect as an issue of fact. It is to be noted that the burden of the issue was

on defendant, and while specifically alleging a failure to listen, the point was sought to be developed by circumstantial evidence, such as plaintiff's failure to hear the street car bell. But whether the bell or gong sounded, was in itself a disputed fact in this record; Dixon v. Texas & P. R. Co., Tex.Civ.App., 164 S.W.2d 252, Syl. 2; hence did not conclude the inquiry. A full disclosure from plaintiff of all facts and circumstances, involving among other things the extent of her listening or failure to listen on the occasion, was elicited by direct and cross-examination. We cannot say there was no evidence on the issue, but rather that legitimate inferences reasonably to be drawn therefrom would have supported a finding either way. The proposition is overruled.

■ Refused by the trial court was appellant's requested issue No. 1, of which subdivision (a) is quoted: "Do you find from a preponderance of the evidence that the plaintiff moved toward the east track without first ascertaining whether any street car was approaching from the north?" These issues in substance were given on first trial, and the controlling effect of our former decision is now invoked, the contention being that materiality thereof has been firmly established, there appearing no substantial difference in the testimony. But the second trial was on amended pleadings of both parties, with additional issues on contributory negligence; under which new submission we believe the particular issues may be re-examined for materiality. The "law of the case" does not necessarily apply where issues presented on the two different trials are by no means identical. Closner v. Gannaway, Tex.Civ.App., 55 S.W.2d 888, writ ref.; 3 Am.Jur. p. 542.

■ By reference to our former opinion, defendant's issues above were held proper on first trial because of certain evidence pertaining to plaintiff's alleged negligence. There, as here, defendant's general defense was based on allegations of plaintiff's delayed and hurried movement from rear car door to east track, without warning and unexpectedly, at a time when it had reasonably appeared to the operator of the approaching car that all passengers on the opposite car had unloaded and the platform cleared. On this statement of defensive facts, the specific acts of con-

tributory negligence were pled.[1] Testimony was adduced in support of a sudden and delayed exit, to which the issues under discussion were deemed applicable. However, on the present trial and supplementing the jury finding (15) that plaintiff did not fail to keep a proper lookout for the southbound car, new issues and answers were, in effect: (17) that she did not fail to listen for approach of the southbound car; (20) that her failure to go toward Asbury Street or Hillcrest before proceeding in an easterly direction did not constitute negligence; and (23) that she did not fail to promptly alight from the northbound car after it stopped. It will be observed that the last-named issue (23) fully raised the jury question (omitted from former charge) of whether plaintiff's exit from car was prompt or belated, and thereby the trial court was justified in refusing the "ascertainment" issues of which complaint is made. The word "ascertain", in common usage, would mean to see or determine, and in legal significance has been defined as "To find out or learn for a certainty by trial, examination or experiment * * * to make sure by investigation." 4 Words and Phrases, Perm. Ed., pp. 341, 344, 345. Pughe v. Coleman, Tex.Civ.App., 44 S.W. 576. It occurs to us that the refused issues are wholly referable to defendant's theory of a sudden and delayed exit, and are therefore covered by given issue (24) of whether her failure to alight promptly was in turn a failure to exercise ordinary care; for it was only in event of a delayed exit that due precaution for her own safety could involve plaintiff's duty to actually determine the presence of the passing car. Refusal of defensive issues, effectually covered by other defensive issues given, is not error. See citation of cases, Texas Digest, Trial, ⊜351(5).

On the other hand, plaintiff, as a passenger, promptly alighting by invitation on defendant's premises, with company rules restraining passage of southbound cars past the loading zone whilst passengers were being discharged, we do not think that, in the exercise of ordinary care, she was required to do more than look and listen for an approaching car; and, in the situation thus presented, the requested issues, even if given and answered in defendant's favor, should be disregarded. It may be contended that aforesaid look and listen findings extended merely to plaintiff's act of alighting, not inclusive of a similar duty as she moved to the east track. The issues, however, are not so worded and bear upon plaintiff's movements "at the time and on the occasion in question."

Moreover, the only means by which plaintiff could have ascertained the presence of defendant's car was by exercise of her normal senses in looking and listening; and defensive issues (answered in the negative) are in substance that plaintiff did not fail to keep a proper lookout, and listen for the southbound car. Thus a further defensive finding under said requested issues that she was negligent in failing to see or ascertain that the self-same car was approaching, would but have involved the hazard of another conflict.

Defendant's refused issue No. 5(a) inquires whether plaintiff failed to exercise ordinary care for her own safety in not keeping out of reach of the southbound car until it had passed; and would seem to be a restatement of its requested issue No. 1 just discussed, in that the inquiry relates to plaintiff's failure to see the car and thus keep out of its reach. Aside from this, the issue simply involves the effect of plaintiff's conduct at the time, i. e., of whether she should have done something other than move toward the east track, and is adequately covered in given defensive issue No. 20 of the court's charge: "Do you find from a preponderance of the evidence that at the time and on the occasion in question the failure of Minnie Mae Graham to go toward Asbury Street or Hillcrest Avenue before *proceeding in an easterly direction,* was a failure to exercise ordinary care?" to which the jury has answered "No." (Italics ours.)

After careful study we conclude that the points above considered should be overruled and the judgment of the trial court affirmed.

Affirmed.

---

[1] On first trial plaintiff was charged with failure to exercise ordinary care for her own safety (d) "in suddenly running toward the east track without first ascertaining whether any street car was approaching from the north"; and on this trial the same defense was alleged (d) "in *suddenly moving* to the east track without first ascertaining whether any street car was approaching from the north." (Italics ours.)

Bond, Chief Justice (dissenting).

BOND, C. J., dissents.

I am not in accord with the holding of the majority that the trial court did not err in refusing to submit appellant's requested issue, raised by pleading and evidence, of contributory negligence and its corollary issues, in plaintiff's moving toward the track without first ascertaining whether any street car was approaching. It will be seen on the former appeal of this cause, Graham v. Dallas Railway & Terminal Co., Tex.Civ.App., 165 S.W.2d 1002, 1004 (writ refused), that appellant was denied affirmance of the judgment of the trial court on conflict of findings on the very issues here involved. If the issues were material in the former appeal to reverse the cause, certainly a refusal to submit the same issues on this appeal warrants a like decision.

In the former appeal, the issues submitted, and here requested, were: Issue 17: "Do you find from a preponderance of the evidence that the plaintiff, after she had alighted from the northbound street car, moved to the place where she was struck by the southbound street car without first ascertaining that the southbound street car was approaching? Answer: Yes." Issue 18: "Do you find from a preponderance of the evidence that the plaintiff, by moving from the place where she alighted from the northbound street car to the place where she came in contact with the southbound street car without first ascertaining the southbound street car was approaching, if you have so found, failed to exercise ordinary care for her own safety, as that term is herein defined? Answer: Yes." Issue 19: "Do you find from a preponderance of the evidence that the plaintiff's failure to exercise ordinary care in the respect inquired about in special issue No. 18, if you have so found, proximately caused or contributed to cause, as that term is herein defined, the collision between the plaintiff and the street car? Answer: Yes." On these issues this Court said: "It will be observed that defendant" (appellant here) "would be entitled to judgment under above findings, unless Issues 17, 18 and 19 be disregarded; and this, appellant strenuously insists, the trial court should have done." A review of the findings and conclusions of this Court on the former appeal and of the majority on this appeal, warrants the declaration that courts should be consistent in their opinions, involving rights of litigants. In this appeal, the majority opinion says: "We cannot say there was no evidence on the issue, but rather that legitimate inferences reasonably to be drawn therefrom would have supported a finding either way."

Appellee, a passenger on appellant's northbound street car, emerged therefrom and departed eastward without looking up the track to see if another street car was approaching, thus deliberately entered the zone of danger. It is undisputed that when she stepped off the street car, she could have seen the approaching car on the other track if she had looked. She testified: "I could see the end of the car line if I looked." While she looked before she stepped from the car, seeing no other car approaching on the parallel track because, as she said, a large post obscured her view, yet she proceeded eastward to cross the other track in front of the passing car without further looking. If plaintiff got off the northbound car as soon as it stopped and looked up the track for an approaching car, the fact that she did not see the car did not relieve her of the further duty of looking again before going onto the track. Appellee, in moving toward the track where she was hit, evidently was impressed with a sense of security—that she could cross the track in perfect safety, based upon the fact that she had not theretofore seen the car when she emerged from the other car. In Phelan Co. v. Schneider, Tex.Civ.App., 146 S.W.2d 244 (writ refused), and Miller v. Rhodius, Tex.Civ. App., 153 S.W.2d 491 (writ refused), the Supreme Court has made the rule that where the injured parties crossed streets in front of moving vehicles, relying upon a sense of security, believing they could safely cross, they were not guilty of contributory negligence as a matter of law. In the Phelan case, the injured party thought he could safely cross the street in front of a moving truck. He based his conclusion upon the rate of speed at which the car was approaching and the distance it had to travel before reaching him. The Beaumont Court of Appeals held that plaintiff was not guilty of contributory negligence as a matter of law, but that the facts presented the issue for the jury's determination. This is the holding in Miller v. Rhodius, supra. In the instant case, the injured party based her conclusion of safety upon not seeing the approaching

car as she alighted from the northbound street car; hence, if she was not guilty of negligence as a matter of law, the evidence clearly raises the issue for determination of the jury.

In view of the positive testimony of five witnesses that the bell of the approaching car was ringing, as against the negative testimony of plaintiff's witnesses that they did not hear it; and the circumstances of plaintiff's exit from the car—looking but not seeing because of a large post obstructing her view—I submit that this Court should exercise its fact jurisdiction to prevent miscarriage of justice. The fact issue as to whether she had a duty to ascertain her safety before going into the zone of danger should have been submitted to the jury, and refusal to submit the issue warrants a reversal. In connection with the refusal, and the majority's view expressed in its opinion, that such refusal was rendered harmless by the jury's findings on other issues of negligence, such as, that plaintiff did not fail to look and listen, did not fail to alight promptly and was not guilty of failing to move toward Asbury Street or Hillcrest Avenue before proceeding eastward across the track, our Supreme Court, in State v. Schlick, Tex.Sup., 179 S.W.2d 246, 248, said, pertinent here: "We disapprove that holding because it ignores the rule that a litigant is entitled to have all issues, pleaded and raised by the evidence, affirmatively presented to the jury, with his right to their submission determined before verdict and not afterward. Thurman et al. v. Chandler et al. 125 Tex. 34, 81 S.W.2d 489. And it is no answer to say that a finding on respondents' issues submitted to the jury amounted to a finding on petitioners' issues which were not submitted, as there is no certain way to tell what the answers to the unsubmitted issues would have been. Workmen's Loan & Finance Co. v. Dunn, Tex.Civ. App., 134 S.W.2d 370. See, also, Dallas Railway & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683."

I submit that if plaintiff's duty was satisfied by findings of the jury that she was not guilty of negligence in failing to look and listen as she alighted from the street car, and that she was not guilty of negligence in failing to go toward Asbury Street or Hillcrest Avenue before proceeding in an easterly direction across the tracks, such findings did not satisfy the requested de-fensive issues of contributory negligence in failing to further look before entering the zone of danger. The defensive issues having been determined, that she was not guilty of negligence in failing to look and listen for approaching cars as she alighted from the street car, and was not guilty of negligence in failing to take another course—move toward Asbury Street or Hillcrest Avenue—before proceeding eastward across the tracks, do not satisfy the error of the trial court in refusing the issue of failure to ascertain her safety in going eastward across the track. Aside from the findings of the jury, which are against the preponderance of the evidence, the assignment of errors in the above-related specific issue of negligence justifies reversal and remand of the cause as a matter of law. I respectfully dissent.