## DALLAS RAILWAY & TERMINAL CO. v. ORR.
### No. 5861.

Court of Civil Appeals of Texas. Amarillo.
April 5, 1948.

Rehearing Denied May 3, 1948.

864

Burford, Ryburn, Hincks & Ford, of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

PITTS, Chief Justice.

Appellee, Leona B. Orr, sued appellant, Dallas Railway & Terminal Company, for damages as a result of personal injuries sustained by her at a street intersection in Dallas by reason of a collision on July 25, 1943, between appellant's bus and an automobile owned and driven by Lee H. Williams in which automobile appellee was riding at the time. The case was tried to a jury on twenty-nine special issues.

As a result of the verdict judgment was rendered for appellee in the sum of $10,000 from, which appellant has perfected its appeal.

The jury exonerated appellee and Lee H. Williams of any and all charges of negligence and contributory negligence, found that the collision was not an unavoidable accident but that appellee's damages resulted from and were proximately caused by various acts of negligence of appellant's driver of the bus.

Appellant charges that the trial court erred because of its refusal to send two pictures of the street intersection, which had been admitted in evidence, into the jury room during its deliberation. The record reveals that while the court bailiff was directing the jury into the jury room after the close of the argument, appellant's counsel requested the trial court, outside of the presence and hearing of the jury, to send the pictures to the jury room, to which request appellee's counsel objected and the trial court said the pictures would be sent to the jury room if the jury requested them. The jury did not request them and they were never sent to the jury room.

It has been held that photographs and pictures showing conditions and the physical facts as they actually existed at a street intersection at the time of a collision such as this, are admissible in evidence and may be taken by the jury to the jury room to be observed by the jury during its deliberation, particularly if and when the photographs and pictures have some bearing on the controversial issues and will help the jury determine such issues. The record reveals that appellee and Lee H. Williams were travelling north on Good Street and appellant's bus was travelling west on San Jacinto Street and the collision occurred at the point of their intersection. The two original pictures in question are before us marked "Defendant's Exhibits 4 and 5." One of them was taken on Good Street about twenty-five feet south of the street intersection where the collision occurred and the other one was taken on Good Street about one hundred feet south of the said intersection. Both of them clearly show the intersection

and Good Street for some distance but they show only a few feet of San Jacinto Street on each side of the intersection. The record reveals that the pictures do not reflect the physical conditions of the intersection as they existed at the time of the collision. Both pictures show a large "stop" sign on top of a post that appears to be some six feet high placed on the right-hand side of Good Street just south of the street intersection, thus making Good Street appear to be what is commonly known as a "stop street" at the intersection which would require people travelling north on Good Street, as appellee and Lee Williams were travelling on this occasion, to stop and look for traffic on San Jacinto Street where they cross. The record reveals and appellant's counsel admitted in open court when the pictures were offered in evidence over appellee's objections that the stop sign had been placed there since the collision. It was admitted by all parties that the street intersection was a hazardous intersection due to buildings, which are shown in the pictures. It is our opinion that the pictures would not have helped the jury to determine any controversial issues but, on the contrary, they were merely cumulative disclosures corroborating other evidence heard. Because they reflected a big stop sign at the street intersection on the street travelled by appellee and her driver, Williams, that was not there at the time of the collision, it might have resulted in prejudicial injury to appellee if the pictures had been sent to the jury room where the jury could inspect and discuss the views shown in the pictures during their deliberation. While appellant admitted in open court that the stop sign had been placed there since the collision, jurors could not look at either picture without seeing the stop sign and its very presence appearing in the pictures admitted in evidence may have easily given the jury the impression that it was the duty of the driver, Williams, to have stopped at the street intersection and yielded the right of way to appellant's bus driver. In view of the record it is our opinion that no injury to appellant has been shown and that the trial court did not commit any reversible error, if in fact any error at all, in its refusal to grant the request of appellant's counsel to send the pictures to the jury room since the record reveals that the jurors examined the pictures while in the jury box soon after they were introduced and since they did not call for them during their deliberation.

■ Appellant next assails the trial court's judgment because of its refusal to exclude from the jury's consideration any of appellee's physical disabilities existing prior to the accident in question except insofar as such disabilities were aggravated by the accident.

The record reveals that appellee received the injuries on July 25, 1943, but the case was not tried until May 15, 1947; that appellee was forty years old·at the time of the trial and had been holding a position at the time she received the injuries that paid her $20 per week and that she lived with her parents and helped care for them; that she had been married but was divorced in 1934, since which time she had been single; that as a result of the collision she received internal injuries which caused pain and which caused her to spit up blood and pass blood in her urine; that her right arm and shoulder were injured and her left leg was bruised; that her back was bruised; that her womb was jarred and pulled out of place; and that all of said injuries made her nervous and caused her much pain. The record further reveals that after her injuries she was confined to her bed and was helpless for three weeks and was in bed most of the time for three months and had not recovered from such injuries four years later at the time of the trial. Dr. E. B. Burton was called soon after her injuries and treated her continuously as such was needed and was still treating her at the time of the trial. He testified that her physical disabilities were due to the injuries and not to natural causes. He further testified that ordinary ailments could sometimes lead to complications that may cause chronic infirmities. The record further reveals that after about five months appellee returned to her work before she was able to work and she found it necessary to give up that job and to find another that would permit her to work sitting down and

that she was still unable to do much work of any kind at the time of the trial. The evidence revealed that prior to her injuries appellee had been subject to colds, influenza, sinus trouble and other ordinary common ailments; that she had some dental work done and had a miscarriage some years previously during her married life. But the evidence shows that her health was generally good and that she was not suffering from any infirmities or chronic troubles prior to her injuries. There was no evidence that her disabilities were caused by any prior existing infirmities or disabilities or that any previous illness of any kind that she had ever had previously was in any way connected with or intermingled with the injuries she received as a result of the collision.

The trial court asked the jury in Special Issue Number 29 the following question: "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will reasonably compensate the plaintiff, Leona B. Orr, for physical and mental pain in the past, if you find there has been any in the part, and for her diminished capacity to labor and earn money in the part, if you find she has suffered any diminished capacity to labor and earn money in the past, proximately resulting from the injuries, if any sustained by her at the time and on the occasion in question? Answer in dollars, if any, and cents if any."

Appellant complains because the trial court refused to submit its general instruction tendered in connection with said Special Issue which was as follows: "Gentlemen of the Jury, in reaching your answer to Special Issue No. 29, you will not compensate plaintiff for any physical or mental pain, if any, and diminished capacity to work and labor, if any, in the past, resulting from plaintiff's frail and weakened condition, female troubles, and bad health, if any, existing prior to the accident on July 25, 1943, except insofar as they may have been aggravated, if you find that they have been aggravated."

It is our opinion that the language used by the trial court properly limited recovery only for the injuries received as a result of the collision and there was no need for the further instructions requested by appellant. Sam v. Sullivan, Tex.Civ.App., 189 S.W.2d 69; Cullinan v. Hare, Tex. Civ.App., 181 S.W.2d 594. Appellant's complaint to the contrary is overruled.

Appellant charges in its third point that it was error for the trial court to refuse to grant it a new trial because of alleged inflammatory argument made by appellee's counsel in his closing argument to the jury as set out in its sixth bill of exception. Appellee contends that the argument about which appellant complains was invited and warranted in reply to argument previously made by appellant's counsel; that no objection was made by appellant to the argument at the time it was made and no motion was made for a mistrial but a complaint was made about the argument by appellant for the first time in its motion for a new trial; that "appellant does not complain of any particular statement, any particular line, or any particular sentence, but on the other hand takes a shotgun blast at about two pages of argument" and that appellant "does not claim that it was injured by the argument but merely that 'appellant was probably injured by some inflammatory remarks.'"

Appellant sets out the argument about which it complains in its sixth bill of exception as follows, to wit: "Now then, on the matter of being restrictive, you know God created man, and he made him to where he could think, and he could talk, and above all, he has a soul. Man created a corporation. Man created this defendant, Dallas Railway & Terminal Company. Can it talk? No, it can't talk. Can it breathe? No, it can't breathe. Can it think? No, it can't think. Has it got a soul? No, it hasn't got a soul. An insensible, intangible thing. Man, you can see him. He is tangible. He is visible. He can speak. He can breathe. He can walk. But, that corporation, represented by that claim agent, no. Restrictive? Why do they put their witnesses down on the second floor; hide them in the courthouse? Why do they do it? Come into the courthouse and talk about 'restrictive.' And, it is the man that says that, that puts them down there. He keeps them

hid out down on the second floor for several days. It is the representative of that insensible, intangible thing with no soul that sends a picture man out to take one side of the thing, and one side only. Why didn't he take pictures from the way the bus was going? Why didn't he do it? Cover up the truth, if it is at all possible to cover it up. Distort it, if it can be distorted. Hide it, if it can be hidden. Smudge it with black, if it can be done. But don't let the honest to goodness truth leak out and be known. Hide it."

Appellant charges that the argument was made by appellee in order to prejudice the minds of the jury and further states: "We submit that the record shows, especially in the light of the doubtful evidence on liability and the large amount of damages awarded, that appellant was probably injured by some inflammatory remarks."

Appellee replies that the argument was made in reply to a previous argument made before the jury by appellant's counsel as follows, to wit: "In determining credible testimony, you, of course, naturally consider the interest. Is the witness interested in this case? Has the witness got something he wants to get out of this case? Has a witness got something in some other lawsuit he wants to recover in? His interest is certainly an element you want to take into consideration. Then, what about his demeanor on the stand. How did he or she appear to you? Was it an honest, open, broad, frank, clear, concise statement; or was it colored, thought out, altered changed, reticent, retiring, restrictive testimony that you heard here on the stand?"

Appellant charges that because of "doubtful evidence on liability and the large amount of damages awarded, that appellant was probably injured by some inflammatory remarks," but no particular remarks are pointed out about which complaint is made. It is true that a general complaint is made about all of the argument made by appellee's counsel hereinabove set out but nowhere is the charge made that any part of the argument or all of it constituted reversible error. Appellee's argument draws a distinction between an individual and a corporation; then charges that appellant hid its witnesses; then charges appellant of trying to cover up the truth and distort the facts because it took pictures of only one of the cross streets and not the other. The argument set forth discusses several different isolated subjects but appellant complains about all of them in one point and fails to point out definitely any particular error. Appellee charges that the point is too general to be considered. We think the complaint made is rather indefinite, quite general and is multifarious. Yet, because of our indulgence and liberal construction of the rules in favor of the sufficiency of a brief and our purpose to give effect thereto if we can determine about what a party is complaining, we are considering and passing on this point. However, we do not share the view expressed by appellant that the evidence is insufficient to support liability and the amount of damages awarded to appellee by the jury. Counsel is required to confine his argument to the evidence and argument of opposing counsel. He is given great latitude in discussing issues and making reasonable deductions but not unlimited latitude.

It is our view that a part of appellee's argument, at least, was justified and warranted in reply to the argument previously made by appellant's counsel. In his previous argument counsel for appellant challenged the conduct and motives of witnesses and pointed out that because of personal interest they would color the testimony and may enter into a conspiracy. He indirectly emphasized that persons are tangible creatures capable of scheming, planning and defrauding. No names were called but the record reveals that both appellee and the driver of the automobile, Lee H. Williams, testified. His argument called for some sort of a reply and appellee's counsel may have inadvertently said more than was really necessary in his reply. But we do not find any particular element of improper information in his argument. As previously stated, the record reveals that appellant took pictures of only one street and that some of its witnesses waited on the second floor. No objection was made to the argument until a motion for a new trial was filed by appellant. It is

our opinion that any argument that might not have been justified was of such a nature that its harmful effect, if any it had, could have been cured by withdrawal of same by counsel or by instruction of the trial court or by both if appellant had objected or called the trial court's attention to the matter at the time the argument about which it complains was made. It has been held that a failure to complain under such circumstances constitutes a waiver and no reversible error is presented.

In speaking for the Dallas Court of Civil Appeals in a similar case styled Baker Hotel of Dallas v. Rogers, Tex.Civ.App., 157 S.W.2d 940, 944, Justice Looney said: "We think objection should have been made at the time the alleged improper argument was made, either openly, or privately to the court; at least before the retirement of the jury; or, if appellant deemed the argument so prejudicial as that neither an explanation or withdrawal by counsel, nor an instruction by the court, would have rendered the argument harmless, request should have been made to withdraw the case from the jury and discharge the panel. We do not think a litigant should be permitted to lie in wait, take chances on a favorable verdict and, being disappointed, sally from ambush and, for the first time, complain of an improper argument in the motion for a new trial."

We overrule appellant's charges made in its third point and cite the following additional cases in support of our position: Alpine Telephone Corporation v. McCall, Tex.Civ.App., 195 S.W.2d 585; Texas Employers Ins. Ass'n v. Goines, Tex.Civ.App., 202 S.W.2d 487; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054.

■ Appellant next attacks the judgment of the trial court in points 4 and 5 because it refuses to give appellant's requested Special Issues 3 and 4 but instead, and in lieu thereof, gave Special Issue No. 15. In its requested Special Issues 3 and 4 appellant requested the trial court to ask the jury if appellee failed to keep a proper lookout for the bus as she entered the intersection at the time and on the occasion in question and if such was not a proximate cause of the collision if she did

so fail. The trial court refused the request but submitted Special Issue No. 15 in the following language:

"Do you find from a preponderance of the evidence that the plaintiff failed to keep a proper lookout for defendant's bus at the time and on the occasion in question? Answer 'yes' or 'no'."

In Issue 16 it was asked if such was a proximate cause of the collision if she did so fail. The jury answered Number 15 in the negative and it was not therefore necessary to answer Number 16.

It appears from the record that the matter about which appellant here complains was covered by the trial court in the submission of Issues 15 and 16 and it has been held in the case of Dallas Ry. & Terminal Co. v. Graham, Tex.Civ.App., 185 S.W.2d 180, 184, that "refusal of defensive issues, effectually covered by other defensive issues given, is not error." It likewise appears that the Supreme Court decided a question of this same nature against the contentions of appellant in the case of Triangle Cab Co. v. Taylor, 144 Tex. 568, 192 S.W.2d 143, in which the said court there followed the same rule laid down in the case of Blaugrund v. Gish, 142 Tex. 379, 179 S.W.2d 266. Appellant's points 4 and 5 are therefore overruled.

■ Appellant complains in point 6 that the trial court erred in its refusal to permit the witness, Brandes, to explain to the jury why the City of Dallas, after the date of the collision in question, placed a stop sign upon Good Street at the point where the said street crossed San Jacinto Street, the intersection being the place of the collision here in question. Any reason the officials of Dallas or any witness might have given for placing a stop sign on the said street at some date subsequent to the date of the collision would have been wholly immaterial as to any issue in this case and appellant's complaint in point 6 to the contrary is overruled.

■ Appellant next charges that the trial court erred in its instruction given to the jury relative to the legal rights of persons operating motor vehicles at street intersections. The trial court gave the fol-

lowing instructions about which appellant complains: "In your consideration of *l*the foregoing special issue, you are instructed that when two motor vehicles approach and enter into a street intersection the vehicle that first enters said intersection has the right-of-way over the other vehicle; also, that when two vehicles enter into a street intersection at the same time the vehicle entering from the right hand side has the right-of-way over the other vehicles."

In connection with the instruction the trial court asked in Special Issue Number 2 if appellee entered the intersection first. In Special Issue Number 25 it asked if appellant's bus entered the intersection first. While in Special Issue Number 27 it asked if the parties entered the intersection at the same time. The jury answered all three of the issues favorable to appellee and against appellant. The trial court's instructions correctly pronounced the law in regard to the right of way at intersections and made the law applicable to both parties in submitting the issues above referred to. Rule 277 of Texas Rules of Civil Procedure authorizes the trial court to submit necessary explanatory instructions in connection with the submission of issues, especially if it finds it necessary to submit inconsistent issues to which an affirmative answer to one may be apparently true but an affirmative answer to both of them apparently cannot be true, or is not likely to be true, as was the case at bar. It was possible for both vehicles to enter the intersection at the same time and the trial court asked such a question but the jury found they did not. It is usually most likely that one of the cars will enter the intersection first and in this case the jury found that appellee entered the intersection first. The jury further found in answer to Special Issue Number 3 that appellant's failure to yield the right of way to appellee and her driver at the intersection was a proximate cause of appellee's injuries. However the jury further found in answer to other special issues that appellant's bus driver was guilty of negligence in two other instances that proximately caused the injuries, namely, in his failure to keep a proper lookout and in his driving at a neg-

ligent rate of speed. It has been held that any error in submitting a ground for negligence is harmless where the jury found the defendant negligent on other grounds that proximately caused the injuries. West Texas Coaches, Inc. v. Madi, Tex.Com. App., 26 S.W.2d 199, and Texas & Pac. Ry. Co. v. Duncan, Tex.Civ.App., 193 S. W.2d 431. It is our opinion that it was not error for the trial court to give the instruction about which appellant complains. But, if such was error, it was a harmless error since appellant was found guilty of two other acts of negligence which proximately caused appellee's injuries in addition to the one about which appellant here complains.

■ We overrule appellant's complaint in point 8 about the trial court's refusal to instruct the jury concerning a purported settlement appellant made in an entirely different transaction with two sons of Mrs. Clyde Smith, who testified in this case for appellant. Upon cross-examination the witness, Sudderth, who was appellant's claim agent, was asked about a settlement made with Mrs. Smith's two sons by appellant in a different transaction in an effort to impeach the testimony of Mrs. Smith. Appellant did not object to the question at the time it was asked but the witness answered the question in the negative corroborating the testimony previously given by Mrs. Smith. The matter about which appellant here complains becomes wholly immaterial and could not be grounds for reversible error. United Employers Casualty Co. v. Marr, TexCiv.App., 144 S.W. 2d 973.

■ Appellee charges that there is no assignment of error supporting appellant's ninth point of error. We have failed to find any direct assignment of error supporting the said point which complains because the trial court in the submission of Special Issue Number 17 to the jury limited the inquiry about appellee's failure to warn the driver of the automobile in which she was riding to a point in time and place immediately prior to the collision in question. However the point is being considered by us and it is being overruled. Special Issue Number 17 was submitted in the following language: "Do you find

from a preponderance of the evidence that the failure of the plaintiff, immediately prior to the collision in question, to warn the driver of the car of the approach and presence of defendant's bus, was a failure to exercise ordinary care? Answer 'yes' or 'no'."

The jury answered the issue in the negative. Appellant complains about the use of the word "immediately" but we find no fault with the language used in submitting the issue.

In its tenth and final point appellant complains that the trial court erred in its failure to hold that appellee was guilty of contributory negligence as a matter of law by reason of her failure to keep a proper lookout as she and the driver approached the intersection at the time in question.

■ .The record reveals that appellee was reading a post card and trusting the driver as they approached the intersection. The record further reveals that, although the driver, Williams, could not hear well at the time of the trial, he could hear well four years previously at the time of the collision; that he was a good driver and was driving carefully at the time of the collision. The jury acquitted him as well as appellee of any negligence while it found appellant's bus driver wholly responsible for the collision that resulted in appellee's injuries. In the case of Edmiston v. Texas & N. O. R. Co., 135 Tex. 67, 138 S.W.2d 526, 530, Judge Smedley, speaking for the Commission of Appeals, holds that the driver of an automobile is in charge of the same and the law imposes upon him the duty of keeping a proper lookout at all times while a guest riding with the driver may ordinarily, reasonably and lawfully depend on the driver to keep watch. The guest is not required to use any more than reasonable care or ordinary prudence. The court in that case further held that: "Save in exceptional situations, a guest or passenger in a vehicle is not required to keep a constant lookout or to see to it that he shall be in a condition to do so. Thus, a plaintiff riding in the front seat may take his attention off the road to look at the scenery or may turn around to speak to a friend in the back or he may go to sleep or read

a book without being guilty of contributory negligence if the driver commits some negligent act which the plaintiff, had he been on the alert, might have had the opportunity to prevent. However, if the plaintiff knows that at a particular point there will be a peculiar danger, which he has no reason to believe that the driver if unaided will perceive, the plaintiff may be guilty of negligence if he does not keep himself in a position to call the danger to the attention of the driver. Save under such exceptional circumstances, a plaintiff is entitled to trust the vigilance and skill of his driver unless he knows from past experience or from the manner in which the car is being driven on the particular trip, that the driver is likely to be inattentive or careless."

Under the record in this case we find no occasion to hold that appellee was guilty of contributory negligence as a matter of law and appellant's complaint to the contrary is overruled.

A careful examination of the record and appellant's points of error fail to reveal any reversible error and the judgment of the trial court is therefore affirmed.