We conclude that the first question in questions numbered 5 should be answered in the negative.

In view of the answers made, we do not consider it necessary to answer question No. 2.

We pass now to a consideration of the sixth question. There are expressions in the Teel Case, cited in the certificate, which might be interpreted as supporting the contention that the Magnolia Petroleum Company's lease was not entitled to the benefit of the principle of innocent purchaser for value in good faith. However, it is possible that the decision in that case was rested upon the theory that only a nominal consideration was paid and that the real consideration was development which could not be enforced by the lessor. If this is not true, then, if the Teel Case has not been overruled by our Supreme Court, in the case of Gilmore v. O'Neil, 107 Tex. 18, 173 S. W. 203, it has at least been ignored in that opinion.

In that case the contest was between O'Neil, as the owner of the equitable and superior title to a tract of land upon which an oil lease had been executed by the apparent owners of the land, and Gilmore and Nicholson, to whom the lease had been assigned. The question was whether or not Gilmore and Nicholson were protected as innocent purchasers for value without notice. If the lease, in that case, created no estate in the land, then the Teel Case was applicable, and Gilmore and Nicholson could have been denied the defense of innocent purchaser on the authority of that case. Instead of doing so, the decision was placed on the ground that the plaintiffs had notice, and the Teel Case was not referred to and was, in effect, overruled. The tenor of the opinion is such that the conclusion that the Supreme Court would have held Gilmore and Nicholson innocent purchasers of a legal title but for notice is inescapable. The question was involved in the case of Erwin v. Olsen (Tex. Com. App. sec. B.) 241 S. W. 473, and the law of innocent purchaser was applied but not discussed.

[9] Without elaborating our views on the matter, we think that a lease conveying oil and gas in place for a valuable consideration with the right to enter and appropriate creates and conveys to the lessee an estate in the land itself and is not a mere option, and conclude that question No. 6 should be answered in the negative.

CURETON, C. J. The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

---

**HINES, Director General, v. KELLEY.**
**(No. 383–3601.)**

(Commission of Appeals of Texas, Section B. June 30, 1923.)

**1. Death &⟶104(4)—Instruction held erroneous in not excluding elements of grief, loss of society, and mental pain and anguish.**

In an action for the death of plaintiff's son, instruction that, if the jury found for plaintiff, they should assess her damages at such sum as they believed would fairly compensate her, as shown by the evidence to have been sustained by her, but that in estimating such damages they should consider her pecuniary loss only, *held* erroneous, in not expressly excluding from the jury's consideration the elements of grief, loss of society of plaintiff's son, and mental pain and anguish.

**2. Trial &⟶256(13) — Defendant held not bound to request that instruction on damages for death expressly exclude damages for mental pain and anguish, loss of society, etc.**

In action for death of plaintiff's son, defendant was entitled to have the instruction on

---

damages expressly exclude elements of grief, loss of society, and mental pain and anguish, and, on the court instructing the jury to consider only plaintiff's pecuniary loss, defendant was not bound to request further instruction excluding such elements.

**3. Death ⊚⟷104(6) — Defendant entitled to proper instruction on measure of damages.**

As plaintiff, in action for death of her son, was not entitled to the full amount of any sum which the jury might believe she would have received in the future from her son, but only the value at the time of the trial of such future contribution, and the jury would be warranted in discounting such sum by whatever method might seem just, defendant had right to have the charge clearly express the proposition that the measure of compensation was the present value of whatever contribution the jury might find plaintiff was deprived of.

**4. Evidence ⊚⟷78 — Plaintiff, in action for death in railroad accident, held entitled to testimony of those making a report to the railroad as to the accident.**

In an action for death in a railroad wreck, it was not error to permit plaintiff to introduce testimony to the physical conditions by a witness, who had been a member of a board of investigation secured by the railroad company to report to it concerning the accident, as against contention that it was calculated to produce inference that the report, which was not offered by either party, must be unfavorable to defendant; such report having been published in newspapers and both sides being aware of its contents.

**5. Railroads ⊚⟷250—Testimony of investigator reporting accident admissible.**

U. S. Comp. St. §§ 8642, 8645, requiring railroads to report accidents to the Interstate Commerce Commission, and declaring such reports inadmissible as evidence, does not preclude any one who participated in the investigation from testifying as a witness concerning what he actually saw in discharge of his duty of investigation.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by Saletia Kelley against Walker D. Hines, Director General of Railroads. On judgment of the Court of Civil Appeals (226 S. W. 493), affirming a judgment in plaintiff's favor, defendant brings error, for conflict of decisions. Judgments of the district court and Court of Civil Appeals reversed, and cause remanded to district court for new trial.

Baker, Botts, Parker & Garwood, of Houston, and Proctor, Vanderberge, Crain & Mitchell, of Victoria, for plaintiff in error.

Fly & Ragsdale, of Victoria, for defendant in error.

McCLENDON, P. J. The writ of error in this case, which was granted because of conflict with Railway v. Gant (Tex. Civ. App.) 175 S. W. 746, was sued out upon a judgment of the Court of Civil Appeals, affirming a judgment of the trial court in favor of Saletia Kelley against Walker D. Hines, Director General of Railroads, for $15,000, recovered in an action for compensatory damages for the death of plaintiff's son, Claude Kelley, who was killed in a railroad wreck on the Galveston, Harrisburg & San Antonio railroad, while in the discharge of his duties as locomotive fireman. The case was tried to a jury upon a general charge.

The question upon which the writ was granted relates to the action of the trial court in overruling certain objections to the court's charge upon the measure of damages. That charge was amended by the trial court before its submission to the jury, so as to meet one of the objections urged, but in other respects was submitted as originally drafted. As amended and delivered to the jury, the charge was as follows; the portion added by amendment being in italics:

"If your verdict is in favor of plaintiff, Saletia Kelley, you will assess her damages at such sum as you believe from the evidence will fairly compensate her for her alleged damages, if any, shown by the evidence to have been sustained by her by reason of the negligent injury and death of the said Claude Kelley by the defendant. *But in estimating such damages, if any, you will consider her pecuniary loss only.*"

The objections urged against the charge read:

"First. Because same does not exclude from the consideration of the jury those elements of damages which the jury should not consider, such as grief, loss of society of plaintiff's son, mental pain and anguish, and such other elements as the jury might improperly consider in a case of this sort, other than of a pecuniary nature.

"Second. Because same incorrectly states the measure of damages, in that it does not limit the amount, if any awarded, to such a sum as, if allowed now, would give plaintiff, Saletia Kelley, the compensation which she in law would be entitled to.

"Third. Because said paragraph of the charge does not confine the jury, in its consideration of the elements of damage, to the pecuniary loss, if any, sustained by Saletia Kelley by the death of her son."

It will thus be seen that the third objection was cured by the amendment. The questions now presented are whether defendant was entitled to have the charge amended so as, first, to exclude from the jury's consideration the elements of "grief, loss of society of plaintiff's son, and mental pain and anguish"; and, second, to limit the amount of recovery to such a sum as, "if allowed now," would compensate plaintiff for her loss.

"Our statute, which gives a right of recovery for injuries resulting in death, provides, among

other things, that 'the jury may give such damages as they may think proportioned to the injury resulting from such death; and the amount so recovered shall be divided among the persons entitled to the benefit of the action, or such of them as shall then be alive, in such shares as the jury shall find by their verdict.' Rev. Stat. art. 3027. There could hardly be a statute more vague in its terms than this. It is, however settled by our decisions that the damages which may be recovered under the statute are such pecuniary benefits as the plaintiff had a reasonable expectation of receiving from the deceased, had he lived. City of Galveston v. Barbour, 62 Texas, 172. By 'pecuniary benefits' is meant not only money, but everything that can be valued in money, and includes in case of a minor child who is suing for the death of a parent the reasonable value of such nurture, care, and education as the child would have received from the deceased parent had such parent lived. But neither sorrow for the death of the deceased relative (Houston City St. Ry. Co. v. Sciacca, 80 Texas, .350) nor the loss of his or her society (Taylor, B. & H. R. R. Co. v. Warner, 84 Texas, 122) are recoverable in such cases. Now we think it apparent that, in the absence of some instruction in a charge of this character as to the damages which were to be estimated and as to those which were to be excluded, a jury would be likely to give compensation both for the grief and the loss of society caused by the death." Railway v. McVey, 99 Tex. 28, 87 S. W. 328.

We also quote from Railway v. Farmer, 102 Tex. 235, 115 S. W. 260:

"It is important, therefore, in an action of this sort, that the jury should not only be given instructions ·to allow a recovery as authorized by the language of the statute, but that they should also be instructed for what elements no recovery can be allowed."

It is contended by defendant in error that the amendment of the charge, which limited the plaintiff's recovery to "her pecuniary loss only," eliminated from the jury's consideration the elements of grief, loss of society, and mental pain and anguish; that the charge as amended was correct, and presented no affirmative error; and that, if plaintiff in error desired to have the stated elements expressly eliminated, it was incumbent upon him to present a special charge upon that subject. In the McVey Case the jury were not charged that the amount recoverable was the pecuniary loss. They were so charged, however, in the Gant Case; but there was there no express limitation to pecuniary loss.

[1] It will be seen from the above quotations from the McVey and Farmer Cases that the Supreme Court has held distinctly that· a general charge, couched in the language of the statute, is misleading and affirmatively erroneous, if the elements of ·grief and loss of society are not expressly excluded from the jury's consideration. The statute does not use the expression "pecuni-

ary loss." In determining what elements are and what elements are not embraced in the statute, the Supreme Court refers to the former as pecuniary losses, and the holding of the Supreme Court, in applying this expression to the elements it is held to embrace, seems to accord with the decisions in other jurisdictions, where recovery is expressly limited by statute to pecuniary loss or damage. Carter v. Railway, 76 N. J. Law, 602, 71 Atl. 253, 19 L. R. A. (N. S.) 128, 16 Ann. Cas. 929. In passing upon the sufficiency of the charge, however, the Supreme Court clearly indicates that the improper elements themselves must be excluded—specifically, and not by some general expression descriptive of those elements, which may not be clearly understood by one unfamiliar with the legal interpretation of that expression. To the trained legal mind there is a marked distinction between loss by a child of its parents' care, nurture, and education, and loss of the parents' society and companionship, from the viewpoint of their pecuniary value, although each may be equally incapable of reduction to a monetary equivalent by any accurate method or certain rule or criterion. The former has a tangible value in fitting the child for the duties and responsibilities of life; while the value of the latter rests more properly in the emotions, sentiments, and feelings. We hardly think that the average juror could be expected, without aid from the court, to give to the expression "pecuniary loss" a meaning which would necessitate, in a proper case, the drawing of such distinction. To one possessed of the common feelings and sentiments of humanity, which control the actions of all well-disposed persons, the grief of a mother for an obedient and dutiful son, upon whom she is dependent, and the loss of his society and companionship, are among the most potent and compelling realities. It was the clear purpose of the Supreme Court in the McVey and Farmer Cases to hold, we think, that a charge which did not expressly exclude these elements from the jury's consideration was misleading and afforded ground for reversal.

[2] The reasons for holding the charge affirmatively erroneous are even more cogent now than formerly. Before our present statute upon the subject was adopted, the charge was read to the jury before being presented to counsel, who had no opportunity of having it corrected, except by special charge. Under our present practice, the charge is first submitted to counsel, who have the right to object to it, and the court trying the case has ample opportunity and is charged with the duty to amend it, so as to meet all proper objections. There can be no question but that the defendant was entitled to have expressly excluded from the jury's consideration the elements of sorrow, grief, and loss of society; and we think clearly that this right extended to having this exclusion expressed in the court's main charge dealing

with the measure of damages. That charge, to say the least of it, was not so clear to the average mind as necessarily to exclude these elements. The practice of splitting up the charge upon a single issue, such as the measure of damages, and giving it to the jury in separate instruments, is not so satisfactory, we think, as to have the entire law of the case upon such issue presented in the court's general charge. We think, therefore, the defendant was not required to present his objection in a special charge, but was within his rights in resting upon his demand that the court's general charge be amended to meet the objections. This was the holding in the Gant Case, and upon this holding alone it clearly conflicts with that of the Court of Civil Appeals in the present case.

We also approve the holding in the Gant Case to the effect that the action of the trial court in overruling the objection to the main charge indicates he would not have given a special charge upon the same subject, and that the defendant was not required to repeat in another form an objection already overruled.

We are not to be understood as intimating that the further objection that the charge did not exclude other improper elements, not specifically pointed out, was entitled to consideration by the trial court. Our holding goes only to such elements as were expressly designated in the objection.

[3] For substantially the same reasons we think the trial court erroneously declined to limit the recovery to such sum as, "if allowed now," would compensate plaintiff for her loss. To quote from Railway v. Morrison, 93 Tex. 527, 56 S. W. 745:

"The right of plaintiffs was to recover compensation for the loss sustained, and such loss was of the aid or benefits which their son would have bestowed upon them. They are therefore to be compensated for the value of those, but are not to receive them as they would have received them from him from time to time throughout their lives, but by a lump sum paid now. Whether or not a less sum than that to which the son's whole contributions would have amounted would compensate plaintiffs for the loss of such contributions as he would have made them was a question which should not have been taken from the jury by a charge which assumed that the compensation must necessarily consist of a sum equal in amount to that of such contributions. The jury should have been left free to determine, under all the circumstances, the sum which would compensate plaintiffs for the loss of the benefits having a pecuniary value which the son would have rendered to his parents."

The charge under consideration was in some respects different from those in Railway v. Morrison, above, and Traction Co. v. White, 94 Tex. 468, 61 S. W. 706. It instructed the jury generally to assess plaintiff's damages at such sum as they might believe from the evidence would fairly compensate her for her loss. There can be no question

but that the plaintiff was not entitled as a matter of law to the full amount of any sums which the jury might believe she would receive in the future from her son. It was only the value at the time of the trial of such future contribution, and the jury were warranted, if they thought proper in discounting such sums by whatever method might seem to them fair and just. We think defendant had the right to have the charge express in clear and unequivocal terms that the measure of compensation was the present value, as shown by the evidence, of whatever contribution the jury might find plaintiff was deprived of by reason of her son's death.

[4] Error is also assigned upon the admission of the following testimony of W. S. Higgins, who was assistant superintendent of maintenance of way of the railroad company, and who was tendered as a witness by plaintiff for the purpose of showing the physical conditions he found upon visiting the scene of the wreck on the day following:

"Yes, the said company had established, and we have, written instructions with reference to wrecks and the duties of officials of the road on the division where wrecks occur. These instructions are that, whenever we have a derailment involving damages to track and equipment or casualty to persons, we are to convene a board of inquiry, consisting of division officers—the superintendent, the assistant superintendent of maintenance of way, the assistant superintendent of motive power—and two disinterested citizens, to ascertain the cause or responsibility and make our recommendations; and on the day following this wreck such board was assembled at the scene of the accident, as prescribed by the rule, such board composed of the following members: Mr. Jones, superintendent, and the assistant superintendents, to wit, Mr. Adams, now deceased; Mr. Dodge, I believe, and myself, and Mr. Breeden and Mr. Leonardt, of Cuero, as the two disinterested parties. These are the parties the rules prescribe shall hold the inquiry."

The Mr. Breeden mentioned in this quotation had previously testified at the instance of plaintiff, but the trial court declined to permit him to state under what circumstances he visited the scene of the wreck. No part of the report referred to was offered by either party, and the two witnesses in question were only asked concerning what they saw at the time they visited the scene of the wreck, except that Higgins was interrogated and permitted to testify to his estimate of the train's rate of speed at the time of the wreck, judged from the physical evidences he discovered.

The grounds upon which it is urged that this testimony was improper are that it was calculated to produce in the minds of the jury an inference that the report must be unfavorable to defendant, otherwise he would have offered it in evidence, and that

the report was made in compliance with a rule which should be highly favored by public policy, and to permit evidence of such rule in a suit for damages would tend to discourage railroads from making or carrying out rules of this character. We think the objections are untenable. The report of the commission had been published in four local newspapers, and both sides were fully cognizant of its contents. The information contained in it was therefore in the possession of both parties, and the inference to be drawn from defendant's not offering it in evidence was no stronger than the inference to be drawn from plaintiff's not offering it in evidence. There is no suggestion in the record that any reference during the trial or in the argument was made to the report, or the fact that it was not before the jury. It would be going far afield, we think, in the realm of surmise, to infer that the jury were in any way influenced unfavorably toward defendant by the mere circumstance that he did not offer the report in evidence.

But, aside from this, we think it was entirely proper to show, not only by the witness Higgins, but by the witness Breeden, the circumstances under which those witnesses made investigation of the physical facts to which they testified. The fact that Breeden was a disinterested citizen, selected by officials of the railroad company to make an impartial investigation, would place a value upon his testimony which would not attach to it, if his presence at the place of the accident were that only of a casual observer prompted by idle curiosity. As to the witness Higgins, it was certainly proper to show that he was in the employ of the railway company, and we think the jury were also entitled to know, in weighing his testimony, that he made the observation and measurements he testified to while acting in the capacity of one charged with the duty of investigating and reporting upon the cause of the wreck. Every fact or circumstance was proper evidence to go to the jury which had material bearing upon the credibility of the witnesses or the weight to be given their testimony.

[5] We are referred in this connection to the United States statutes, which require reports by railroads to the Interstate Commerce Commission on all accidents resulting in injury to persons, equipment, or roadbed, and which authorize the Interstate Commerce Commission to conduct impartial investigations of such accidents, and to make and publish such reports thereon as the Commission may deem proper. U. S. Com. Stat. §§ 8642 and 8644. Section 8645 reads:

"Neither said report nor any report of said investigation, nor any part thereof, shall be admitted as evidence or used for any purpose in any suit or action for damages growing out of any matter mentioned in said report or investigation."

There is nothing to indicate that the report in question was made in compliance with these statutes, although it may be reasonably inferred that the rule of the company was passed for the purpose of gathering the information with which to make a report. But, even conceding that the report falls within those referred to in section 8645, that section does not inhibit anyone who has participated in the investigation from testifying as a witness concerning what he actually saw while in the discharge of his duty in making the investigation, and if such investigator in fact testifies upon the trial as to conditions found by him, we think it proper to show the circumstance under which he obtained his information. We are clearly of the view that there was no error in permitting the witness Higgins to testify concerning the rule and to give the names of the members of the investigating board.

The only remaining error assigned is to the refusal of the trial court to instruct the jury peremptorily in favor of defendant. It is contended that this instruction was improperly refused, because the evidence was not sufficiently definite to warrant the jury to find any sum in favor of plaintiff. We are clear in the view that the Court of Civil Appeals correctly overruled this assignment. But since the evidence upon this subject may be made more certain upon another trial, the question presented is unimportant.

We conclude that the judgments of the district court and Court of Civil Appeals should be reversed, and the cause remanded to the former for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.