TYLER MIRROR & GLASS COMPANY et al., Appellants,

v.

Ollie SIMPKINS et ux., Appellees.

No. 220.

Court of Civil Appeals of Texas.

Tyler.

Oct. 13, 1966.

Rehearing Denied Nov. 10, 1966.

Ramey, Brelsford, Flock & Devereux, Mike Hatchell, Donald Carroll, Tyler, for appellants.

Howard S. Smith, Smith, Johnson & Mc-Dowell, Sulphur Springs, Woodrow H. Edwards, Mount Vernon, for appellees.

DUNAGAN, Chief Justice.

Ollie Simpkins and his wife, Zodie, brought this suit against Tyler Mirror & Glass Company and its employee, Alan Mauldin, for damages allegedly sustained by Zodie Simpkins when she was struck by a truck driven by defendant Mauldin. Several acts of negligence on the part of defendant Mauldin were alleged to be the proximate cause of various injuries sustained by Zodie Simpkins on the date in question. Plaintiffs sought damages against defendant Mauldin individually and from Tyler Mirror & Glass Company under the doctrine of respondeat superior.

The case was tried to a jury which found the primary negligence issues against the defendants and found contributory negligence and all other issues for the plaintiffs. On the basis of these answers and the jury findings of damages, the trial court awarded damages to plaintiffs in the sum of $17,514.00.

Appellants do not raise any issue on this appeal as to their liability, but predicate their appeal solely upon errors relating to the court's charge regarding damages.

The trial court's charge contained the standard type charge on damages which reads as follows:

"SPECIAL ISSUE NO. 7

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will fairly and reasonably compensate plaintiffs for the damages, if any, suffered by them from the injuries, if any, of Zodie Simpkins directly and proximately caused by the incident on August 14, 1963?

"Answer in dollars and cents, if any.

"ANSWER: $14,778.00

"In fixing the above amount of damages, if any, you will consider the following things and no other:

"(1) The reasonable value of loss of capacity, if any, of Zodie Simpkins to perform her household duties in the past and the reasonable value of the loss of capacity, if any, which Zodie Simpkins will in reasonable probability suffer in the future to perform her household duties by reason of the incident on August 14, 1963;

"(2) Fair and reasonable compensation for the loss of earnings, if any, suffered by Zodie Simpkins from August 14, 1963 to date;

"(3) The reasonable present cash value of such loss, if any, of earning capacity

she will in reasonable probability sustain in the future;

"(4) The physical pain, if any, and the mental anguish, if any, which Zodie Simpkins has suffered from August 14, 1963 to date; and

"(5) The physical pain, if any, and the mental anguish, if any, which Zodie Simpkins will in reasonable probability suffer in the future."

Feeling that there was no evidence connecting many of the physical conditions in evidence with the accident in question, appellants timely requested in writing the following exclusionary instructions in connection with the above damage issue, all of which were refused by the trial judge:

*Instruction No. 1:*

"You are instructed, however, that in arriving at your answer to the above and foregoing Special Issue you must not take into consideration or allow anything for the cataract of the right eye."

*Instruction No. 2:*

"You are instructed, however, that in arriving at your answer to the above and foregoing Special Issue you must not take into consideration or allow anything for high blood pressure."

*Instruction No. 3:*

"You are instructed, however, that in arriving at your answer to the above and foregoing Special Issue you must not take into consideration or allow anything for gall bladder trouble."

*Instruction No. 4:*

"You are instructed, however, that in arriving at your answer to the above and foregoing Special Issue you must not take into consideration or allow anything for colon trouble."

The jury returned the verdict finding damages as follows: (1) $14,778.00 for the damages sustained by Mrs. Simpkins in the collision, and (2) $1,400.00 for further hospital, medical and drug expenses in response to Special Issue No. 9.

Neither pleadings nor proof by either party attempted to make the case one in which the accident aggravated a pre-existing condition or infirmity.

We will set forth a summary of the pertinent testimony bearing on the question before this court.

The injuries alleged to have been sustained by Zodie Simpkins were "a concussion and lacerations across the right side of her head; injuries to her right eye which has resulted in the complete loss of sight of the same; her left arm was broken; chest injuries including fractures and injuries to her rib cage; shoulder injuries and cervical spinal injuries; as well as injuries and damage to her nerves and entire nervous system, and also numerous bruises and abrasions about her entire body."

Essentially, appellants contend that four separate injuries or conditions—loss of eyesight, colon trouble, gall bladder trouble and/or high blood pressure—alluded to in the testimony of various witnesses were not shown by any evidence to be causally related to the accident in question and should have been excluded from the jury's consideration. Briefly, the evidence relating to these conditions is as follows:

*Loss of Eyesight*

Appellees specifically pleaded that Mrs. Simpkins lost the sight of her right eye as a result of the accident in question. As the evidence later developed, the specific contention was that the accident caused a traumatic cataract to form in her right eye, essentially blinding the eye to all except bright light.

Mrs. Simpkins herself testified that after the accident her right eye was "sticking out" and hurting, and that she told the doctors about this. She also testified that there was nothing wrong with her before

the accident that she knew of and she was not aware that she did not have any vision in her right eye before the accident, but that she was not able to see out of her right eye after the accident. This is essentially all the testimony Mrs. Simpkins was able to give relating to her alleged loss of eyesight.

Testimony from the several doctors who treated Mrs. Simpkins in the hospital and after she was released did, in fact, confirm that she had a traumatic cataract in the right eye. But, this is all that the medical testimony reveals about the cataract. None of the doctors stated that within reasonable medical probability the traumatic cataract was, probably was, or even could have been caused as a result of the accident in question. In fact, the testimony from the doctors who treated Mrs. Simpkins immediately after her accident is to the effect that the traumatic cataract could not have been caused by the accident in question.

Dr. McCarthy, who examined Mrs. Simpkins when she arrived at the emergency room at Medical Center Hospital in Tyler, Texas, (approximately 6:30 p. m. on the day of the accident) testified that upon his initial examination he noticed a traumatic cataract in the patient's right eye, and that, at no time, from the date of his initial examination to the time she was discharged from the hospital, did Mrs. Simpkins complain about pain in the right eye or inform him of any recent change of vision in that eye. Nor did Dr. McCarthy administer any treatment to Mrs. Simpkins in regard to her right eye. There is testimony that the accident occurred at approximately 5:00 p. m.

Dr. Steph, who was called in by Dr. McCarthy to examine Mrs. Simpkins, confirmed that there was a traumatic cataract or opacification of the lens in her right eye, but he did not ever think it to be of recent origin.

All the medical testimony in the record indicates that a traumatic cataract is caused by some injury to the eye—either a blunt injury or a puncture injury, and that it takes weeks, months, or even a year for such a cataract to form from a blunt injury. There is no testimony as to how long it would take a traumatic cataract to form from a puncture injury, but this question would appear to be academic because Dr. Steph and Dr. McCarthy positively testified that there was no direct injury to or about Mrs. Simpkins' right eye when they examined her, nor any cut, bruise, scratch, laceration, contusion, abrasion or penetration of the area in and around the right eye.

### Other Conditions

Dr. Lacey, appellees' main medical witness, testified to discovering and treating Mrs. Simpkins for high blood pressure, colon trouble and gall bladder trouble. Dr. Lacey did not testify that these conditions were caused, could have been caused, or were the natural result of the accident in question. Appellants argue, therefore, that Dr. Lacey's testimony in regard to colon trouble, gall bladder trouble, and high blood pressure stands for nothing more than the fact that appellee was suffering from these conditions after the accident.

Appellants point out that the existence of these conditions is important, however, because Dr. Lacey did testify that Mrs. Simpkins would not be able to perform housework or any gainful employment requiring stooping or lifting, because she was dizzy and not able to balance herself properly. The reason she suffered dizziness, according to Dr. Lacey, at times was because of her high blood pressure and, at times, because of the colon and gall bladder trouble. Dr. Lacey further testified that dizziness and loss of balance were not always simultaneously present and that loss of balance could be caused by Mrs. Simpkins' head injury. He could not, however, state that this was anything more than a possibility, because he was not a specialist and could not run proper tests to determine if this were true.

On this appeal the appellants first contend that "The trial court erred in refusing to include in the Court's Charge appellants' requested exclusionary instructions, because, without these instructions, the Charge permitted the jury to determine that plaintiff had sustained loss of eyesight, colon trouble, gall bladder trouble and/or high blood pressure as a result of the accident in question, when there was no evidence showing that any of these injuries were proximately caused by any negligence on the part of the defendant Mauldin" and seeks a reversal and remand of this case to the trial court for another trial.

Appellants say there is no evidence that loss of eyesight, colon and gall bladder trouble or high blood pressure were caused from the accident in question. The basis of appellants' argument in support of their contention is that there is no evidence in the record to establish that loss of eyesight, colon and gall bladder trouble, or high blood pressure complained of by Mrs. Simpkins were caused from the accident in question. Appellants argue that the evidence goes further and establishes as a matter of law that loss of eyesight—appellees' major item of damage—was not caused in the accident.

■■ To be entitled to recover damages for loss of eyesight, or any of the other injuries in evidence, appellees had the burden of proving that Zodie Simpkins' injuries were proximately caused by the acts complained of. Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216 (1942); Scott v. Gardner, 159 S.W.2d 121 (Tex.Civ.App.1942), writ ref., w. m.; 40 Tex.Jur.2d 667, 668, Sec. 144; 17 Tex. Jur.2d 305, Sec. 246. Further, it is well established that, in personal injury cases, the law exacts that proof of which the case is susceptible. Dallas Consolidated Electric St. Ry. Co. v. Motwiller, 101 Tex. 515, 109 S.W. 918 (1908).

It is undisputed that the appellee, Zodie Simpkins, sustained injuries to her head, fracture of the left arm, cuts or lacerations on her right leg, superficial abrasions on her left leg and broken ribs as a result of the collision, and appellants have conceded that she did. However, the undisputed and direct testimony from the doctors who testified establishes that she (Mrs. Simpkins) did not suffer any type of puncture wound on, to, or about her right eye. In particular, however, appellees offered substantial evidence showing that Zodie Simpkins was, at the time of the trial, suffering from the following specific conditions: (1) traumatic cataract in her right eye, causing loss of eyesight; (2) high blood pressure, causing dizziness and loss of balance; (3) colon and gall bladder deficiencies. Appellants contend, however, that none of the above conditions was shown by any evidence to have been caused by the accident and therefore that the jury should have been affirmatively instructed in connection with Special Issue No. 7, the general damage issue, not to allow any damages for these conditions.

In regard to these specific conditions, appellee's (Zodie Simpkins) testimony essentially is that she did not suffer from them before the accident, but did begin suffering from them after the accident. Appellee's medical witness, Dr. Lacey, testified that Zodie Simpkins came to him several months after the accident and he observed and treated her for each of the above conditions in addition to treating her for other injuries which were received in the accident. Neither Dr. Lacey nor any other doctor offered any affirmative testimony that Zodie Simpkins' loss of eyesight, high blood pressure, colon and gall bladder trouble were, in reasonable medical probability, a result of the accident in question.

■■ A causal connection between a defendant's negligence and the specific injury for which damages are sought must be shown, and this causal connection will not be presumed from the mere occurrence of an accident, Webester v. Henwood, 134 S.W.2d 333, 334 (Tex.Civ.App.1939), n. w. h. It is the plaintiff's burden to introduce some evidence establishing this causal connection beyond the point of mere specula-

tion or conjecture. Edwards v. Montgomery Ward & Co., 270 S.W.2d 432, 438 (Tex.Civ.App.1954), writ ref.; Prosser, Law of Torts, (Hornbook series, 2d Ed. 1955) Sec. 44, page 222.

■ Cataract, high blood pressure, colon and gall bladder deficiencies are diseases, and a layman does not possess the ability to determine the cause of such diseases without the benefit of some probative expert testimony. This rule has been recognized in a variety of decisions in this jurisdiction. The leading case on the point is Scott v. Liberty Mut. Ins. Co., 204 S.W.2d 16 (Tex.Civ.App.1947), writ ref., n. r. e. In that case, the plaintiff claimed Workmen's Compensation benefits as the result of an accident which allegedly caused a cancerous growth to form in his eye, necessitating the removal of the eyeball. There was no dispute that the accident had occurred and the sole question before the court was whether there was a causal connection between the accident and the subsequent loss of the eyeball. Plaintiff's medical witnesses were unable to testify that the cancerous growth in the eye had been caused by the accident, because they said the origin of cancer was not scientifically known. Plaintiff, similar to the contentions in this case, contended that the jury could have concluded from his testimony regarding the accident and the constant irritation in his eye thereafter that the cancer was caused by the accident. Affirming an instructed verdict in favor of the defendant, the Court of Civil Appeals held:

"* * * But there must be proven a causal connection between the accident and the ultimate death or disability. And this connection must appear from facts proven from which such connection may be reasonably inferred. The mere possibility that such causal connection exists is not sufficient. * * *

"* * * *

"* * * * But there are certain scientific fields wherein the average juror or

layman does not possess the knowledge or information from which to draw his own conclusions; and must be guided by the opinions of experts who have acquired scientific information on the subject. * * * *The cause, diagnosis and treatment of diseases usually come within this category.* * * *" (Emphasis added).

Prosser recognizes this to be the rule, and, in particular, he states:

"* * * Where the conclusion (of causal connection) is not one within the common knowledge of laymen, expert testimony may provide a sufficient basis for it, but in the absence of such testimony it may not be drawn." Prosser, Law of Torts (Hornbook Series, 2d. Ed., 1955) Sec. 44, p. 222.

Other cases announcing the same rule are: Travelers Ins. Co. v. Blazier, 228 S.W.2d 217 (Tex.Civ.App.1950, writ dism'd); Brown v. Shannon West Texas Memorial Hospital, 222 S.W.2d 248 (Tex.Civ.App. 1949, writ ref., n. r. e.); Travis Life Insurance Company v. Rodriguez, 326 S.W.2d 256 (Tex.Civ.App.1959, writ ref., n. r. e., 160 Tex. 182, 328 S.W.2d 434); National Life And Accident Insurance Company v. Shern, 389 S.W.2d 726 (Tex.Civ.App.1965, no writ); John Hancock Mutual Life Insurance Company v. Cooper, 386 S.W.2d 208 (Tex.Civ.App.1965), n. w. h.

■ ■ We recognize that an injured party is permitted to testify in regard to a great many things regarding his physical condition. However, such testimony is usually limited to the *nature and effect* of his injuries. 17 T.J.2d 308, Damages, Sec. 248. This question is completely unrelated to that of *causation,* and nowhere have we found a case where the testimony of an injured party (or any layman) has been accorded probative value on the question of the *cause* of a particular disease. As the above authorities indicate, a layman's testimony upon this question is of no benefit to the jury and has no probative value because

it involves a subject clearly within the field of medical science. Our Supreme Court has recently discussed this very point in Texas Employers' Insurance Association v. Espinosa, 367 S.W.2d 667 (S.Ct., 1963). In that case, plaintiff sought Workmen's Compensation benefits for a specific injury to the eye which was claimed to have extended to and affected the body generally, causing headaches and dizziness. Holding that claimant's subjective complaints alone were not evidence of a causal connection between the initial injury and the subsequent headaches and dizziness, Judge Norvell held:

" * * * Specific injuries like all bodily injuries have their painful aftermaths and like undesirable consequences, but mere proof of this is insufficient in law to show an extension of a specific injury. * * *"

Writ of Error was granted in *Espinosa* on the point raised by dissent in the Court of Civil Appeals, 363 S.W.2d 871, 874, wherein the rule in question was discussed at greater length. There it was said:

"The cases cited in the majority opinion hold that the issue as to disability, and the extent thereof, may be established by lay testimony, even though it may be contradicted by medical evidence. They are not controlling here, however, in that our problem is to show a causal connection between the cut on Espinosa's left eye and the headaches. I have been unable to find a case which permits the jury to establish, without the benefit of evidence, a causal connection between a specific injury and subsequent pain in other parts of the body. * * * *A lay witness is usually not qualified to testify as to cause of, or to diagnose, a disease, and the jury should not be permitted to draw its conclusions by speculation or surmise.* * * *"* (Emphasis added).

Appellants in conceding that Mrs. Simpkins suffered injury and pain point out, however, that some of the alleged disabilities, i. e., loss of balance, dizziness and consequent inability to work were, according to Dr. Lacey (appellee's witness), caused by some of the very conditions which were not proven to be related to this accident.

The testimony of Dr. Lacey, appellee's principal medical witness, in sum and substance is simply that he discovered and/or treated the above conditions for Mrs. Simpkins. Nowhere does he express any opinion of probative force that these injuries were caused by or were the natural result of any injuries sustained in the accident in question. The same is true of the testimony of the optometrist, Dr. Crawford. He could merely state that Mrs. Simpkins had a traumatic cataract, expressing no opinion as to its cause.

■ As we view the evidence before us in this case, there is no evidence of probative force that Mrs. Simpkins' claimed loss of eyesight, colon and gall bladder trouble, and/or high blood pressure were causally related to the accident involved in this lawsuit. Appellants argue that the uncontradicted and positive testimony of Dr. Steph and Dr. McCarthy to the effect that Mrs. Simpkins had a traumatic cataract, which usually takes a substantial length of time to form and which, in their opinion, was caused from a previous accident, establishes as a matter of law that Mrs. Simpkins' claimed loss of eyesight was not in fact caused in this accident.

Appellee's testimony, therefore, has no probative value other than to establish the nature of her physical condition before the accident and the extent of the various injuries, diseases and conditions from which she was suffering after the accident. This testimony is not, however, any evidence that the diseases—cataract, high blood pressure, colon and gall bladder trouble—were caused by this accident. Since there was no medical testimony relating these diseases directly to the accident, we hold, under the record in this case, that the trial court fell into error in refusing to give appellants' requested instructions.

■■ It has long since been established in Texas that a charge which tells the jury that they *may* consider certain elements as damages is not sufficient as an instruction "to the jury not to consider improper elements raised by the evidence and closely intermingled with proper elements." Blaugrund v. Gish, 142 Tex. 379, 179 S.W.2d 266 (1944); Holmes v. Cooley, 308 S.W.2d 150 (Tex.Civ.App.1957), writ ref., n. r. e.; City of Fort Worth v. Satterwhite, 329 S.W. 2d 899 (Tex.Civ.App.1959), n. w. h. In assessing damages in a personal injury action, the jury can allow only for those damages shown to have been proximately caused as a result of the defendant's negligent act, and the trial judge has the duty to expressly exclude from the jury's consideration by an affirmative charge any evidence which cannot properly be considered in assessing damages. Dallas Ry. & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683 (1938); Pedigo & Pedigo v. Croom, 37 S.W.2d 1074 (Tex.Civ.App. 1931), writ ref.; Texas Coca-Cola Bottling Co. v. Lovejoy, 138 S.W.2d 254 (Tex.Civ. App.1940), writ ref.; Scott v. Gardner, supra; Melear v. Fairchild, 278 S.W.2d 280 (Tex.Civ.App.1954), n. w. h.; Wichita Transit Co. v. Sanders, 214 S.W.2d 810 (Tex.Civ.App.1948), n. w. h.

In the case of Dallas Ry. & Terminal Co. v. Ector, supra, which is factually similar to the case before us, Judge Hickman in an opinion adopted by the Supreme Court held:

"It has long been a settled rule in this state that, where a plaintiff in a personal injury suit is suffering from an infirmity not caused by the accident which is the basis of the suit, and where the injuries flowing from the prior existing infirmity and those flowing from the negligence of the defendant are closely connected and intermingled to the extent that the jury might become confused and allow for proper elements of damages, the trial court should *affirmatively* charge the jury that plaintiff is entitled to recover only to the extent that his injuries were aggravated by the defendant's negligence. * * *

* * * * * *

"Since it is not error to specify the elements of damages properly to be considered, it is not error to exclude elements improper to be considered. * * *

"In the instant case the railway company was entitled to an *affirmative exclusion* of such elements of damages, if any, as might have been attributable to the prior infirmities, if any, of Mrs. Ector. * * *" (Emphasis ours).

■■ Appellees contend that in view of the fact that the damage issue limits the jury's consideration to the damage not proximately caused by the collision in the suit, the trial court was not required to give the exclusionary instructions. However, such a limitation is not sufficient when there is a controversy over whether the injuries complained of were in fact caused from the accident in question, Texas & Pacific Railway Company v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528 (1958). This seems to be particularly true in cases, like the one now before us, where there is *no evidence* of probative force of any causal relation between the injuries in evidence and the accident. In this "no evidence" type of case, the plaintiff, *as a matter of law*, is not entitled to recover for those injuries not shown to be causally related to the accident, and the trial judge has the duty to instruct the jury not to consider such elements in assessing damages. If the jury is not so instructed, and they are given the standard charge limiting them to damages "proximately caused" by the accident, then, in a "no evidence" case, the jury is entitled to pass upon a question of law and decide for themselves whether or not there is any evidence of probative force of causal relation. Such is not the role of the jury, and it is well established that it is for the judge—not the jury—to place the proper limitation upon the items of damage to be considered. Panhandle & S. F. Ry. Co. v. Villarreal, 153 S.W.2d 350 (Tex.Civ.

App.1941), n. w. h.; Young v. Howell, 236 S.W.2d 247 (Tex.Civ.App.1951), n. w. h.

■ Since appellees failed to show by any evidence of probative force causal connection between the accident and the various injuries or conditions complained of here, the trial judge's duty to instruct the jury not to consider these elements was clear, and it is perhaps best expressed in Hines v. Kelley, 252 S.W. 1033 (Commission of Appeals, 1923) where it was held:

"* * * In passing upon the sufficiency of the charge, however, the Supreme Court clearly indicates that the improper elements themselves must be excluded—specifically, and not by some general expression descriptive of those elements, which may not be clearly understood by one unfamiliar with the legal interpretation of that expression. * *"

As authorities for their position, appellees cite Airline Motor Coaches, Inc. v. Howell, Tex.Civ.App., 195 S.W.2d 713; Dallas Ry. & Terminal Co. v. Orr, 147 Tex. 383, 215 S.W.2d 862; Transcontinental Bus System, Inc. v. Scirratt, Tex.Civ.App., 376 S.W.2d 56, n. r. e.; Yellow Cab and Baggage Company v. Green, 154 Tex. 330, 277 S.W.2d 92. These cases, especially Yellow Cab and Baggage Company v. Green, are cases in which there was a disputed fact issue regarding causal connection or aggravation of pre-existing injuries. In that type of case, it is the function of the jury to resolve the factual dispute, and therefore, the normal damage issue restricting recovery to damages "proximately caused" by the accident is a sufficient submission adequately confining the jury to allowing for those damages which they conclude, upon the disputed facts, were caused by the accident in question. Moreover, the Eastland Court of Civil Appeals in Teague v. Washburn, 368 S.W.2d 229, writ ref., n. r. e., further distinguished the Yellow Cab and Baggage Company case from those cases such as the one at bar, as follows:

"* * * Appellee cites Yellow Cab and Baggage Company v. Green (Sup.

Ct.) 154 Tex. 330, 277 S.W.2d 92, in support of its contention that it was not necessary to so instruct the jury. *In that case the damage issue, taken with the explanatory instructions, did affirmatively instruct the jury not to allow any damages for pain, suffering or loss of earnings not proximately caused by defendant's negligence. There was no similar instruction here."* (Emphasis ours). Likewise, there is no similar instruction given in the case now before us.

Airline Motor Coaches, Inc. v. Howell, supra, is distinguishable from the instant case in that the Court of Civil Appeals points out that not only was the jury expressly limited in the main part of the issue, but in each element of damage, to injuries resulting from the accident made the basis of this suit. The damage issue in question in the case at bar does not contain such limitations in each element of damage that the jury was instructed by the court they would consider in fixing the amount of damages, if any.

■ The appellees also contend that appellants did not make any objection to the submission of the damage Issue No. 7 and that by the provisions of Rule 274, Texas Rules of Civil Procedure having failed to so object waived any complaint to the exclusion of the requested instructions. It is appellants' contention that under the facts, this case comes within the provisions of Rule 279, T.R.C.P.

The record reflects that in addition to requesting the instructions above shown being Nos. 1–4, the appellants also in writing timely objected to the court's charge for its failure to include therein their above requested instructions, which objections were overruled by the court.

The Supreme Court of this state has held in Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000 (1944) that:

"* * * Rule 279 applies when there is a failure to submit a definition, while Rule 274 applies when a definition is ac-

tually contained in the charge, but the complaining party objects to it because it is thought to be erroneous. When the court fails to define a term which a litigant is entitled to have defined Rule 279 is applicable; but when, as here, the court's charge does contain a definition, but same is unsatisfactory to the litigant, Rule 274 is applicable. * * *"

See also Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312, (S.Ct.) 1943 and Yellow Cab and Baggage Company v. Green, supra.

Appellants having objected both to the court's charge for the failure to include the exclusionary instructions and submitted to the court substantially correct explanatory instructions, they complied with both Rule 274 and 279, therefore it becomes immaterial as to which one is applicable to this case.

In view of our disposition of this case, a discussion of the other Points of Error raised by appellants will not be necessary as they will not likely occur on another trial.

For the reasons above stated, this case is reversed and remanded to the trial court.

SELLERS, Justice.

I find myself unable to agree with the majority in this case to the effect that expert testimony of doctors must be taken as true and disbelieve the injured party who testified that she was in good health before the accident, and after the same, could not see out of an eye that was injured in the accident; that before the accident she could do work, and after the accident she was dizzy and could not work.

In a case like this, it is my opinion that a jury issue is made as to whether the dizziness was from the injury or was brought on by the disease of high blood pressure which had no connection with the accident. In the opinion, Judge Alexander was correct when he said in the case of Maryland Casualty Company v. Hearks, 144 Tex. 317, 190 S.W.2d 62, in discussing the right of a juror to consider the evidence of a doctor, had this to say:

" * * * When all conflicts in the testimony are resolved in favor of the verdict, it will be found that the statements made by the jurors amounted to nothing more than a layman's discussion of the weight to be given to the evidence before the jury. It was the mere assertion by the juror that in the light of his ordinary experience he did not believe that the test made by the examining physician at the time the employee went to work for the employer was sufficient to determine whether or not the employee was blind in one eye. This was legitimate."

Nor do I find myself in disagreement with the case cited by the majority in Texas Employers' Insurance Association v. Petronilo Espinosa, 367 S.W.2d 667, a compensation case in which the plaintiff sought judgment for a specific injury to the eye and that the specific injury extended to the other parts of the body. The injury to the other parts of the body was shown by the evidence to be pain and headaches and the Court simply held that the specific injury was occasioned by pain and headaches and that such evidence alone would not be sufficient to show injury to other parts of the body.

It would serve no useful purpose to extend this dissent by a discussion of other cases. I deem it sufficient to say that the appellant was not entitled to have the charges given as requested for the reason that it infringed on the jury's duties and since no other complaint is made to the Court's charge, the judgment should be affirmed.