# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00029-CV

**William M. Sawyer and Sharyn Sawyer, Appellants**

**v.**

**Stephanie Antoinette Valderaz, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT NO. A-99-0857-C, HONORABLE DICK ALCALA, JUDGE PRESIDING

This is an appeal of a judgment based on a jury's verdict in a vehicular accident case. The jury found that the defendant was negligent in causing the collision but awarded plaintiff, now appellant, William M. Sawyer zero monetary damages and his wife, Sharyn Sawyer, damages of only $1,200.00. The Sawyers contend that the jury's findings are against the great weight and preponderance of the evidence and are manifestly unjust. Because we find that there is factually sufficient evidence to support the jury's findings, we affirm the judgment.

## FACTUAL BACKGROUND

The liability facts in this case are undisputed. The accident occurred when defendant Valderez failed to stop for a red light. She struck a Suburban being driven by William Sawyer and in which Sharyn Sawyer was a passenger. Valderez was traveling approximately 45 m.p.h. at the time of the collision. Sharyn Sawyer was transported by ambulance to a hospital, but she was

released without restrictions or referrals for further treatment. William Sawyer was not sent to the hospital.

The dispute in this case centers on damages. The jury made the following damage findings:

## QUESTION NO. 2

What sum of money, if paid in cash, do you find by a preponderance of the evidence would fairly and reasonably compensate WILLIAM M. SAWYER for his injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include interest on any amount of damages you find. Also, do not include any amount for any condition not resulting from the occurrence in question.

Elements of damages:

(a) Physical pain and mental anguish
(b) Physical impairment
(c) Reasonable expenses for necessary medical care

Answer in dollars and cents for damages, if any, that were sustained in the past and in reasonable probability will be sustained in the future.

ANSWER:  $ 0

## QUESTION NO. 3

What sum of money, if paid in cash, do you find by a preponderance of the evidence would fairly and reasonably compensate SHARYN E. SAWYER for her injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include interest on any amount of damages you find. Also, do not include any amount for any condition not resulting from the occurrence in question.

Elements of damages:

(a)  Physical pain and mental anguish
(b)  Physical impairment
(c)  Reasonable expenses for necessary medical care

Answer in dollars and cents for damages, if any, that were sustained in the past and in reasonable probability will be sustained in the future.

ANSWER:   $ 1,200.00

The court rendered judgment on the verdict that William Sawyer take nothing and that Sharyn Sawyer recover $1,200.00 plus interest.  The Sawyers' new trial motion complaining of factual insufficiency to support the jury's answers was overruled.

## William Sawyer's Testimony

William Sawyer testified that after the collision he was shaken up and his arm was bleeding.  He opined that some object, probably his clipboard, struck and cut his arm during the collision.  He did not seek medical treatment for it because it was the type of cut that "you treat at home."  He admitted that he had no other visible signs of injury.  Within two days of the accident, he was sore all over and had pain in his neck and back.  The first time he sought treatment was three days later when he went to see his long-time chiropractor, Drew Wallace.  Sawyer said that he continued to experience piercing, knife-like back pain for two years after the accident. Wallace took no x-rays.  Sawyer also had generalized complaints of leg pain, headaches, blurred vision and depression.  He claimed that these injuries prevented him from working for a week after the accident and then periodically thereafter due to doctor appointments resulting from his injuries.  Sawyer sought treatment from an optometrist for blurred vision and he had surgery to remove a tumor on his arm in the same area where he claimed he had received the laceration.

3

On cross-examination, Sawyer admitted that prior to this accident Wallace had treated him for back pain. He admitted that he did not seek treatment for his blurred vision until ten months after the accident and the treatment entailed new glasses. The only proof he had that his vision problem was related to the accident was that it occurred after the accident. He said "it's possible" his vision problem resulted from the collision.

The lump on his arm did not appear until eight months after the accident. A year after the accident he had surgery to remove the growth on his arm and to release a nerve at his carpal tunnel. Sawyer insisted that he told Wallace of his arm injury just after the accident. He could not explain why there was no mention in Wallace's medical records of the arm injury. He admitted that none of his doctors had determined that the lump removal or the carpal tunnel release were related to the vehicular accident. His only proof of a causal connection was his own testimony:

Q: Do you believe that lump was caused by the automobile accident made the basis of this suit?

A I believe there is a good chance it was, because that would have been the area of where I hit the clipboard.

* * *

Q: Are you alleging that the lump that was removed was caused by this accident?

A: I believe it was, sir.

William Sawyer testified that he felt that $18,000.00 would reasonably compensate him for his injuries. He based that figure on his estimate of twenty years of chiropractor visits, at two visits a month, which he felt he was going to require.

**Sharyn Sawyer's Testimony**

4

Sharyn Sawyer testified that she was in very good health before this accident. When the accident occurred, she was leaning against the window with her shoulder. She claimed that her right shoulder and head hit the frame of the window and she was knocked backward on impact. She said that she was severely bruised in the collision, particularly her shoulder. At the hospital emergency room, x-rays were taken and she was released without a referral. She said she "had a severe concussion" and was not allowed to sleep for "more than a day." She did not go to see the chiropractor for six days after the accident because she was too bruised. She was "seeing colored lights inside my head" and could "hear bones grinding in my neck."

She also sought treatment from Wallace who "put quite a few bones back in place." He treated her blurred vision and colored-lights condition by wrapping a towel around her neck and pulling upward on her head to "decompress it." She was still seeing Wallace at the time of trial because "the top bone in my neck will not stay in place anymore." She claimed to have had a headache everyday since the accident. In addition, she testified that she experienced tremendous cramps and "profuse female bleeding" the morning after the accident. She attributed it to the accident because it occurred shortly after the accident and she was post-menopausal.

A week after the accident she said she noticed that her eye was very painful and had a blister. She said "all the skin on my eye peeled off. The whole entire colored part of my eye skin came off of it." She admitted that she had injured the same eye a year before the accident but claimed that it was completely healed before the accident. She went to see her ophthalmologist two months after the accident, and she claimed that her condition "was caused by the concussion making my eyeball swell and it ejected the scar tissue."

Two weeks after the accident she went to the emergency room because of ankle pain. She said that x-rays revealed that her foot was "cracked." She was referred to an orthopedic surgeon, but she did not go because she had no insurance and could not afford it. She claimed that her "cracked foot" resulted from the collision.

On cross-examination, Sharyn Sawyer could not explain why the records of her emergency room visit reflected a diagnosis of a "sprained ankle." As for her mysterious post-menopausal bleeding and cramps, Ms. Sawyer admitted that she had taken some hormones that she had gotten from a family member just before the incident. She admitted that she had failed to tell the gynecologist about taking the hormones, but she was confident that they did not cause her bleeding. She admitted that her previous eye injury occurred when she poked a hole in her eye with a stick while doing yard work and that her eye had difficulty healing. She admitted that, although her cornea healed, it tore again prior to the accident. She admitted that she had been diagnosed with recurrent epithelial or corneal erosion. This meant that periodically part of her cornea would erode. She insisted that her doctor did not relate her eye problem to her prior injury, which she claimed only involved a "very tiny area." She admitted, however, that "[i]t might be true that there is some relationship with me having a prior injury, but the wreck according to Doctor Kirkland, caused the concussion." When asked whether she was asking the jury to believe that the collision caused her corneal erosion, she answered "yes."

She also admitted that ten months after the accident she went to the emergency room because of a coughing fit that resulted in facial weakness and drooping which she attributed to the accident.

6

Finally, she was diagnosed as having Bells Palsy which she believed was related to the collision. However, she admitted doctors mentioned to her that the condition was caused by a viral infection.

**The Chiropractor's Testimony**

The only health care provider to testify was Drew Wallace, the Sawyers' chiropractor. He testified that he treated William Sawyer prior to this accident for lower back and right shoulder problems. He admitted that as time passed both Sawyers reported more and more complaints that they attributed to the collision. They each had more than thirty office visits over a two-year period. He testified that the Sawyers would each need chiropractic treatments for the rest of their lives as a result of the collision.

He diagnosed William as having the following conditions as a result of the accident: (1) cervical hyper-flexion/extension, which is commonly called whiplash; (2) myalgia, which means a sore back; (3) cervical Kyphosus, which is a change in the curve of the neck; (4) right upper back pain; (5) occipital headaches; (6) lumbar segmental dysfunction, which he testified meant that the joints in the back did not move properly; and (7) stiffness in the right knee. Wallace admitted that cervical kyphosus and lumbar segmental dysfunction could each be caused by a number of things other than this accident. He also said that William Sawyer had made no complaints to him about an injury to his arm from a clipboard or other object.

Wallace said that Sharyn Sawyer complained of neck pain, headaches and eye pain. He testified that she made no complaint to him about her ankle, blurred vision or vaginal bleeding.

7

He diagnosed her as having "mild to moderate C-5 and C-6 disk degeneration," which he attributed to the trauma of the accident. However, he admitted that approximately 50% to 85% of the general population has degenerative disks, that it is not always trauma-related and that it is often a function of aging. He also testified that Sharyn Sawyer suffered from lordosis which he defined as a reversal of the curve of the neck. Although changes in the cervical curve are not always trauma-related, he said that a reversal of the curve was always due to trauma.

On cross-examination, Wallace admitted that as a chiropractor he could not prescribe medication, did not have hospital privileges, could not perform surgery and had never worked in an emergency room.

## STANDARD & SCOPE OF REVIEW

When addressing a factual sufficiency of the evidence challenge, we look at all the evidence and must not substitute our judgment for that of the trier of fact. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Reliable Consultants, Inc. v. Jaquez*, 25 S.W.3d 336, 341 (Tex. App.—Austin 2000, pet. denied). When the challenge is to a finding on which the prevailing party had the burden of proof, we may reverse the judgment only if the challenged finding shocks the conscience or clearly shows bias, or the favorable evidence is so weak as to make the judgment clearly wrong and manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). If the challenge is to an adverse finding (or failure to find) on which the appellant had the burden of proof, the finding may only be reversed if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Ames v. Ames*, 776

8

S.W.2d 154, 158 (Tex. 1989); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988).

## EVIDENTIARY SUFFICIENCY REVIEW

Our review of all of the evidence in the record leads us to conclude that the jury's answers to the damage questions were not against the great weight and sufficiency of the evidence and are not manifestly unjust. The jury's answers to Question Nos. 2 and 3 are entitled to deference on appeal. The trier of fact is the sole judge of the credibility of witnesses and the weight to be given their testimony. *PGP Gas Prod., Inc. v. Reserve Equip., Inc.*, 667 S.W.2d 604, 608 (Tex. App.—Austin 1984, writ ref'd n.r.e.). A jury is not required to believe even unimpeached or uncontradicted testimony. It is free to believe one witness and disbelieve another. *Lamb v. Franklin,* 976 S.W.2d 339, 341 (Tex. App.—Amarillo 1998, no pet.). Further, it can believe all or only part of a witness's testimony. *See Miller v. Kendall*, 804 S.W.2d 933, 939 (Tex. App.—Houston [1st Dist.] 1990, no writ). This jury chose not to believe the Sawyers or their chiropractor and the evidentiary record supports their findings.

A jury is within its prerogative to award zero or nominal damages where the alleged damages are soft-tissue injuries or the main indicia of the injuries are subjective in nature. *Biggs v. GSC Enters., Inc.,* 8 S.W.3d 765, 769 (Tex. App.— Fort Worth 1999, no pet.); *Lamb,* 976 S.W.2d at 341; *Blizzard v. Nat'l Mut. Fire Ins. Co.,* 756 S.W.2d 801, 806 (Tex. App.—Dallas 1988, no writ); *see also Sanchez v. King,* 932 S.W.2d 177, 181-82 (Tex. App.—El Paso 1996, no writ) (affirming jury's award of zero damages in light of subjective complaints of pain in claimant's back, neck, headaches, shoulder and arm). All of the complaints for which Wallace treated the Sawyers were

subjective, soft-tissue injuries. Their existence and extent were based solely on the Sawyers' own credibility.

The jury was also entitled to believe that the Sawyers' complaints were the result of prior unrelated conditions or injuries. *Biggs,* 8 S.W.3d at 768-69; *Campos v. Saide Co.,* 957 S.W.2d 168, 169 (Tex. App.—San Antonio 1997, no pet.); *Hilland v. Arnold,* 856 S.W.2d 240, 242-43 (Tex. App.—Texarkana 1993, no writ). William Sawyer had been previously treated by Wallace for chronic back, shoulder and knee problems. Sharyn Sawyer had a prior serious eye injury and had developed corneal erosion.

Each of the Sawyers made unusual claims. Many of them are not commonly associated with vehicular collisions. None of their unusual conditions manifested directly after the accident; rather they surfaced two months to two years later. None of the physicians treating the Sawyers for these various conditions testified to connect them to the collision. The Sawyers' own lay testimony was the sole evidence of causation for the claims of eye problems, tumors, vaginal bleeding, leg pain, depression and a cracked or sprained ankle. Their own lay testimony was not competent to establish causation between Valderaz's negligence and the Sawyers' more unusual complaints.

While a personal injury claimant is competent to describe his own physical injuries, he is not qualified to give opinion evidence regarding their diagnosis and treatment. *Security Mut. Cas. Co. v. Turner*, 457 S.W.2d 305, 306 (Tex. Civ. App.—Austin 1970, no writ). Those matters are peculiarly within the scope of medical science requiring expert medical evidence. *Id.*; *see also Reliable Life Ins. Co. v. Steptoe*, 471 S.W.2d 430, 433 (Tex. Civ. App—Tyler 1971, no writ); *Tyler*

10

*Mirror & Glass Co. v. Simpkins,* 407 S.W.2d 807, 812-14 (Tex. Civ. App.—Tyler 1966, writ ref'd n.r.e.); *Scott v. Liberty Mut. Ins. Co.,* 204 S.W.2d 16, 18 (Tex. Civ. App.—Austin 1947, writ ref'd).

One could reasonably conclude from this record that the Sawyers exaggerated their damages and undermined their own credibility with the jury. The $1,200.00 of damages awarded to Sharyn Sawyer approximates the total amount for the ambulance, the initial emergency room visit, an attending physician and a neurologist's exam ($1,167.43). Obviously, the jury believed Sharyn Sawyer should be compensated for the treatment she sought just after the accident but none other. *See, e.g., Hilland,* 856 S.W.2d at 243; *Blizzard,* 756 S.W.2d at 805.

While Wallace may have been legally competent to testify regarding soft-tissue injuries such as whiplash or muscle strain, the jury was not obliged to believe him. It did not award any amounts for chiropractic services. There was evidence that the Sawyers did not pay for the chiropractic services they received because Wallace would "let it ride." Thus, Wallace had a pecuniary interest in the Sawyers' recovering for past and future "medical" expenses which could have diminished his credibility.

## CONCLUSION

Considering all the evidence in the record, we conclude that the jury's findings are not against the great weight of the evidence and are not manifestly unjust. The judgment of the trial court is affirmed.

11

_____

David Puryear, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed:   October 4, 2001

Do Not Publish

12